IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


NATHANIAL JAMES HENDERSON,                    No. 6:17-cv-00481-HZ

               Plaintiff,                    OPINION & ORDER

    v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

                Defendant.

Tim Wilborn
WILBORN LAW OFFICE, P.C.
P.O. Box 370578
Las Vegas, NV 89137

      Attorney for Plaintiff


Renata Gowie
Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

Ryan Lu
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff Nathanial James Henderson brings this action for judicial review of the Commissioner's final decision denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. This Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c)(3)). The Commissioner's decision is reversed and remanded for further administrative proceedings.

## PROCEDURAL BACKGROUND

Plaintiff applied for DIB on August 18, 2015, alleging disability as of December 29, 2014. Tr. 85.[1] His application was denied initially and on reconsideration. Tr. 101–05, 109–11. On September 7, 2016, Plaintiff appeared, with counsel, for a video hearing before an Administrative Law Judge (ALJ). Tr. 35. On October 20, 2016, the ALJ found Plaintiff not disabled. Tr. 28. The Appeals Council denied review. Tr. 1.

## FACTUAL BACKGROUND

Plaintiff initially alleged disability based on PTSD, a hip malformation, and a torn disc in his back. Tr. 187. He was 35 at the time of the administrative hearing. Tr. 27. Plaintiff has a high school education and past relevant work experience as a truck driver, dispatcher, construction laborer, and infantry crewmember. Tr. 26–27, 188–89.

///

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 11.

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *See, e.g., Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. 137 at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at

141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after his alleged onset date of December 29, 2014. Tr. 21. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: "lumbar spine neural foraminal stenosis; bilateral hip labral tear; status post hip arthroscopy; headaches/migraines; posttraumatic stress disorder; and major depressive disorder." Tr. 21. However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 21. At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform less than sedentary work as defined in 20 C.F.R. § 404.1567(a) with the following limitations:

> The claimant is limited to lifting and/or carrying 10 pounds occasionally and less than 10 pounds frequently. He is limited to standing and/or walking a total of two hours and sitting for a total of six hours in an eight hour day, with normal breaks. The claimant is limited to no more than occasional climbing of ramps or stairs and no climbing of ladders, ropes, or scaffolds. The claimant is limited to no more than occasional balancing, stooping, kneeling, crouching, and crawling. The claimant is limited to understanding and carrying out simple instructions. He is limited to no more than occasional and brief contact with the general public and coworkers.

Tr. 23. Because of these limitations the ALJ concluded that Plaintiff could not perform his past relevant work as a truck driver, dispatcher, construction laborer, and infantry crewmember. Tr. 26. But at step five the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as "eyeglass assembler," "jewelry preparer,"

and "retail surveillance monitor." Tr. 27. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 28.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than preponderance." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

The court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Id.* (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)); *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id.*; *see also Batson*, 359 F.3d at 1193. However, the court cannot not rely upon reasoning the ALJ did not assert in affirming the ALJ's findings. *Bray*, 554 F.3d at 1225-26 (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

## DISCUSSION

Plaintiff contends that the ALJ erred by (1) improperly discrediting Plaintiff's symptom testimony; (2) ignoring the opinion of Plaintiff's examining doctor, John Gardin, PhD; (3) improperly discounting the opinion of Plaintiff's treating counselor, Susan Aviotti, MS, LPC; (4)

improperly rejecting Plaintiff's 100% VA disability rating; (5) improperly discounting the lay witness testimony of Plaintiff's wife, Amanda Henderson; and (6) improperly conducting her Step 5 analysis. Pl. Br. 9–20, ECF 15. Because the ALJ erred in ignoring the opinion of Plaintiff's examining doctor, the Commissioner's decision is reversed and remanded for further proceedings.

## I.     Credibility Determination

The ALJ is responsible for determining credibility.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  In assessing a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929. The first stage is a threshold test in which the claimant must present objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *Tommasetti v. Astrue,* 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage of this analysis, absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Carmickle v. Comm'r Soc. Sec. Admin*, 533 F.3d 1155, 1166 (9th Cir. 2008); *Lingenfelter*, 504 F.3d at 1036.

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). Factors the ALJ may consider when making such determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, and inconsistencies in the testimony. *Ghanim*, 763 F.3d at 1163; *Tommasetti*, 533 F.3d at 1039. In addition, conflicts between a claimant's testimony and the objective medical evidence in the

record can undermine a claimant's credibility. *Morgan v. Comm'r Soc. Sec. Admin.,* 169 F.3d 595, 600 (9th Cir. 1999).

When the ALJ's credibility findings are supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). However, a general assertion that plaintiff is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *see also Morgan,* 169 F.3d at 599.

Plaintiff has severe impairments of lumbar spine neural foraminal stenosis, bilateral hip labral tear, status post hip arthroscopy, headaches/migraines, posttraumatic stress disorder ("PTSD"), and major depressive disorder. Tr. 21. Plaintiff previously served in the Marine Corps as an infantry squad leader and as a member of a cleaning crew, a truck driver, and a dispatcher. Tr. 38–40. He testified that in his most recent job as a dispatcher, he was allowed to work at his own pace as long as he got his work done. Tr. 45. He was also able to take breaks if he was getting too stressed or worked up and could do "pretty much whatever [he] wanted." Tr. 46.

Plaintiff testified that he stopped working as a dispatcher because his employer was "getting rid of [his] position." Tr. 41. But he believes that the true reason he lost his job is because he was vocal about his dissatisfaction with his new boss. Tr. 41–42, 46. Plaintiff testified that towards the end of his employment, his employer began to give him more responsibilities, which limited his ability to take breaks to calm down. Tr. 46. He also testified that he was unable to obtain another truck driving job because the industry is small and "a lot of guys learned that [he] was outspoken and vocal about certain things and . . . wouldn't take the regular BS most drivers would." Tr. 43. He said he was "known . . . for either getting migraines

and taking time off or just blowing up and start throwing things around the yard." Tr. 43. Plaintiff testified that he ultimately applied for disability because going back to work would require him to sacrifice his family. Tr. 46. Specifically, Plaintiff said that when he was working he would prioritize the needs of the men he worked with. Tr. 46. He would "drop everything" for his coworkers and take on more tasks so that they could get the job done or so that they could spend more time with their families. Tr. 48. He also stated that he had a hard time being around people, especially those who make "stupid comments" or do not see things the way that he does. Tr. 48–49.

Plaintiff testified that he stopped taking his medications in 2009 because one of them made him drowsy. Tr. 51. Instead, he "tried to focus on self-calming techniques, like closing [his] eyes, counting to ten" when he was upset. Tr. 52. He said that this "worked" until he lost his job because he became "real depressed that [he] couldn't do anything." Tr. 52. At that time, his hip surgery prevented him from being able to "move or work or do anything." Tr. 52. He restarted his medications in April of 2015 and testified that they prevent him from having "as many angery outbursts." Tr. 52. He experiences no side effects from his current medications Tr. 61.

Plaintiff spends most of his time alone. Tr. 199. He generally needs to be reminded to care for his personal needs and take medication. Tr. 200. He said that he cannot go out alone because of his panic attacks. Tr. 201. On a typical day, Plaintiff sits at home and finds something comfortable that he can do without too much pain. Tr. 60. Often he does schoolwork. Tr. 60. Plaintiff started taking psychology classes online through the University of Phoenix approximately a year prior to the hearing. Tr. 49–50. He said that he decided to take the classes to keep his mind busy. Tr. 51. He testified that he was taking a full-time course load, which

consists of approximately one class per month, and is able to work from home at his own pace. Tr. 50–51. He testified at the hearing that he has been able to maintain his grades. Tr. 50–51.

The ALJ provided four reasons for discounting Plaintiff's credibility as to the severity of his symptoms: (1) Plaintiff's work history, (2) Plaintiff's receipt of unemployment benefits, (3) Plaintiff's ability to take online courses, and (4) Plaintiff's limited mental health treatment history. Tr. 23–24. Plaintiff contends that these reasons are neither clear nor convincing. Pl. Br. 15–18. This Court disagrees.

A. Work History

Plaintiff contends that the ALJ erred in considering Plaintiff's work history in her credibility finding because Plaintiff had accommodations in his most recent job and was ultimately terminated because of his impairments.[2] Pl. Br. 16. The ALJ may consider work that a claimant engaged in—regardless of whether that work amounted to substantial gainful activity— in making his disability determination. SSR 96-7 (prior work and efforts to work are factors used to evaluate a claimant's credibility); *see also* 20 C.F.R. §§ 404.1571, 416.971 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did."). "In weighing a claimant's credibility, the ALJ may consider inconsistencies . . . between his testimony and . . . his work record . . . ." *Light v. Soc. Sec. Admin.* 119 F.3d 789, 792 (9th Cir. 1997). The ALJ may also discount a claimant's credibility where the alleged impairment is not the reason that the claimant stopped working. *See Tommasetti*, 533 F.3d at 1040 (affirming credibility decision where the claimant testified his diabetes was not disabling, was controlled by medication, and was not the reason he stopped

---

[2] Plaintiff also argues that it was improper for the ALJ to consider Plaintiff's work history in the credibility finding because she ultimately found he was unable to perform his past relevant work. Pl. Br. 11, 16. However, whether the claimant is able to do past relevant work based on the RFC that is ultimately formulated is a separate inquiry from whether Plaintiff's work history sheds doubt on Plaintiff's testimony as to the severity of his symptoms.

working); *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (The plaintiff's pain allegations were not credible where the plaintiff reported at the hearing and to his doctors that he left the job because he was laid off, not because he was injured.). And the ALJ may discount a claimant's credibility where he or she has continued to search for work as holding one's self out as capable of work "cast[s] doubt on a claim of disability." *See Ghanim,* 763 F.3d at 1165.

In *Skeens v. Astrue*, the district court affirmed the ALJ's decision to discount a plaintiff's testimony because of the inconsistency between his work history and the limitations he described from lifelong cognitive impairments. 903 F.Supp.2d 1200, 1212 (W.D. Wash. 2012). There, the plaintiff worked steadily and successfully between 1981 and 2001 and stopped working in 2005 for reasons unrelated to his impairments. *Id.* The plaintiff argued that the ALJ erred in finding his work history inconsistent with his cognitive defects because the majority of his work during this time was "accommodated." *Id.* The district court rejected the plaintiff's argument, finding "the record does not corroborate his characterization of the Navy job as 'accommodated.'" *Id.* Because Plaintiff did not present evidence that his impairment worsened over time or that he was terminated because of his impairments, "Plaintiff's successful and lengthy work history [did] undermine his testimony that his cognitive impairments prevent him from working." *Id.*

Here, the ALJ found both that Plaintiff stopped working "due to his position being dissolved, . . . not an inability to do the work" and that there were "multiple inconsistencies in the claimant's work history and his testimony that fail to corroborate a finding of disability under the Social Security Regulations." Tr. 24. The record provides conflicting evidence on these issues. On one hand, there is some evidence that supports Plaintiff's argument that Plaintiff had accommodations during his employment and that symptoms related to his PTSD—namely, his ability to get along with others—resulted in his termination. For example, Plaintiff speculated

that his termination was "related to his condition" because he had been vocal about his dissatisfaction with his new boss. Tr. 41–42; *see also* tr. 180 (noting that his position was eliminated but that he "believe[d] it was related to his condition"). And Plaintiff believed that he was unable to get a new truck driving job because he was known for being outspoken, "blowing up," and taking time off for migraines. Tr. 43. He reported similar difficulties in his examination with John Gardin, a Ph.D. psychologist, in April of 2014. Tr. 364 (reporting occupational difficulties, including being fired and rehired twice, inappropriate outbursts and conflicts, mistakes due to concentration and memory issues, and frequent tardiness). During his hearing, Plaintiff also indicated that he has a hard time working because he cannot be around people, especially those who make "stupid comments." Tr. 48–49. At the hearing and in a work activity report, Plaintiff also stated that he was allowed to work at his own pace as long as he was able to get his work done. Tr. 46, 179. Specifically, he testified that he was able to do his job as he wanted and could take breaks as often as he needed. Tr. 46.

On the other hand, substantial evidence supports the ALJ's finding that Plaintiff was terminated for reasons unrelated to his condition and was able to work successfully despite his conditions. For example, Plaintiff testified that the reason he stopped working was because his employer told him that he "no longer needed [him] because they were getting rid of [his] position." Tr. 41. Elsewhere he notes that he lost his job because his position was eliminated. Tr. 180. He also testified that additional responsibilities or a change in his job duties—not his conditions—made it more difficult for him to work as a dispatcher towards the end of his employment. Tr. 46. This reasonably suggests Plaintiff could have continued working in this position with his conditions had these duties remained the same. Moreover, Plaintiff was able to maintain full-time employment without medication or treatment for his mental health conditions

and after receiving a 70% disability rating from the VA that was increased to 100% temporarily in 2009 and permanently in 2014. Tr. 43–45, 51. Plaintiff also indicated that the reason he decided to apply for disability was unrelated to limitations caused by his medical conditions. He testified that he applied for benefits because he could not balance his work demands with the needs of his family as he "cared more about [his guys'] health and well-being" and would "drop everything" to help them when they needed it. Tr. 48. Finally, he also testified that he held himself out as capable of continuing to work in the trucking industry by applying for a truck driving job. Tr. 42–43.

In light of this evidence, both Plaintiff's and the Commissioner's interpretation of Plaintiff's work history are reasonable. However, the Court cannot substitute its judgment for that of the Commissioner where the Commissioner's interpretation constitutes a rational reading of the evidence. *See Lingenfelter,* 504 F.3d at 1035; *see also Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007) ("Where the evidence can reasonably support either affirming or reversing the decision, we may not substitute our judgment for that of the Commissioner."). Accordingly, the ALJ did not err in finding that Plaintiff's successful and lengthy work history undermines his testimony as to the disabling effects of his impairments.

B. Unemployment Benefits

Plaintiff argues that the ALJ erred in using Plaintiff's receipt of unemployment benefits to discount Plaintiff's credibility as the record does not establish whether Plaintiff "held himself out as available for full-time or part-time work." Pl. Br. 16. The Ninth Circuit has held that the "[c]ontinued receipt of unemployment benefits does cast doubt on a claim of disability, as it shows that an applicant holds himself out as capable of working." *Ghanim,* 763 F.3d at 1165 (citing *Copeland v. Bowen*, 861 F.2d 536, 542 (9th Cir. 1988)). However, where "the record . . .

does not establish whether [the plaintiff] held himself out as available for full-time or part-time work," a finding by the ALJ that a plaintiff's receipt of unemployment benefits casts doubt on their credibility is not supported by substantial evidence. *Carmickle*, 533 F.3d at 1162. Only full-time work, not-part time work, is inconsistent with a claim of disabling conditions. *Id.*; *see also Lind v. Colvin*, No. EDCV 14-1474 RNB, 2015 WL 1863313, at *3 (C.D. Cal. April 23, 2015) (noting that "a person capable of only part-time work may receive benefits under both programs").

Here, the ALJ emphasized that Plaintiff collected unemployment for six or seven months and "reported having applied for truck driving jobs." Tr. 24. In Oregon, however, an individual can apply for unemployment benefits even if they are only eligible for part-time work. *See Jewell-Greene v. Berryhill*, 6:16-cv-250-SI, 2017 WL 3034907, at *9 (D. Or. July 18, 2017) (citing Or. Admin. R. 471-030-0036(2)(b) (2017)). As Plaintiff correctly points out, the record does not provide any additional information on whether he applied for full- or part-time work. The Commissioner argues that Plaintiff's applications for truck-driving jobs and the fact that he lost his job for reasons unrelated to his disability create the reasonable inference that Plaintiff's unemployment applications were for full-time work, Def. Br. 17, but the Court finds this argument unpersuasive. Because the ALJ's finding is not supported by substantial evidence in the record, this finding is an error.

C. Online Coursework

Plaintiff contends that the ALJ erred in rejecting Plaintiff's testimony because it was inconsistent with his ability to take online college courses. Pl. Br. 17. Contradiction with a claimant's activities of daily living is a clear and convincing reason for rejecting a claimant's testimony. *Tommasetti*, 533 F.3d at 1039. There are two grounds for using daily activities to

form the basis of an adverse credibility determination: (1) when activities meet the threshold for transferable work skills and (2) when activities contradict a claimant's other testimony. *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). However, "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," *Reddick*, 157 F.3d at 722, and "the mere fact that a plaintiff has carried on with certain daily activities, such as grocery shopping . . . does not in any way detract from his credibility," *Webb v. Barnhart,* 433 F.3d 683, 688 (9th Cir. 2005) (citing *Vertigan v. Halter,* 260 F.3d 1044, 1050 (9th Cir. 2001)). In order to impact a claimant's credibility, the activity has to be "inconsistent with claimant's claimed limitations." *Reddick,* 157 F.3d at 722. The ALJ cannot mischaracterize statements and documents in the record or take these out of context in order to reach his conclusion on the claimant's credibility. *Id.* at 722–23.

Here, the ALJ found that Plaintiff's symptom testimony is inconsistent with his activities of daily living because Plaintiff "continues to be able to focus and work on the computer for online classes . . . with his reported intermittent headaches." Tr. 24. The ALJ's reasoning on this point is neither clear nor convincing. Though Plaintiff testified at the hearing that he was taking psychology classes full-time online for over a year, he also testified that he was able to do so by working from home at his own pace. Tr. 51. Plaintiff's ability to take online classes under such conditions does not clearly conflict with or shed doubt on Plaintiff's testimony that he struggles with weekly migraines. Accordingly, the ALJ erred in this finding.

D.  Limited Mental Health Treatment

Plaintiff contends that it was an error for the ALJ to use Plaintiff's conservative mental health treatment to discount Plaintiff's credibility. Pl. Br. 16. The Ninth Circuit has "long held that, in assessing a claimant's credibility, the ALJ may properly rely on 'unexplained or

inadequately explained failure to seek treatment or follow a prescribed course of treatment.'"

*Molina*, 674 F.3d at 1113 (quoting *Tomasetti*, 533 F.3d at 1039). However, discounting a

claimant's credibility is not proper where "the claimant has a good reason for not seeking

aggressive treatment." *Carmickle*, 533 F.3d at 1162. Further, in the mental health context,

continuous care under a mental health professional and the prescription of psychotropic

medications do not constitute "conservative treatment." *Overton v. Berryhill,* No. 17CV25-BEN

(BLM), 2017 WL 5159550, at *18 (S.D. Cal. Nov. 6, 2017). And the Ninth Circuit has cautioned

that individuals with mental health impairments should not be penalized for exercising "'poor

judgment in seeking rehabilitation.'" *See Regennitter v. Comm'r Soc. Sec. Adm.,* 166 F.3d 1294,

1299–1300 (9th Cir.1999) (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996)).

Here, Plaintiff suggests that the ALJ "single[d] out 'a few periods of temporary well-

being from a sustained period of impairment' in an attempt to discredit Plaintiff." Pl. Br. 16

(citing *Garrison v. Colvin*, 759 F.3d 995 (9th Cir. 2014)). This characterization misstates the

ALJ's decision. Rather than focus on temporary periods of well-being, the ALJ emphasizes that

Plaintiff was "able to work without psychotropic medications for more than four years at the

competitive level." Tr. 24. In support of her argument, she notes that Plaintiff ceased taking

psychotropic medications in 2009 and instead relied on self-calming techniques to cope with the

symptoms of his mental health conditions. Tr. 24. She also emphasizes that Plaintiff only began

taking medications again in 2015 and has since experienced fewer angry outbursts. Tr. 24.

The record generally supports the ALJ's finding. While Plaintiff does report that he

ceased taking his medication due to its side-effects, he also was able to successfully work for

many years by relying only on self-calming techniques. Tr. 52 (stating that these techniques

worked until a year and a half prior to the hearing or early 2015, or throughout the duration of his

employment). There is also no evidence in the record to suggest that Plaintiff attempted to seek treatment in order to obtain an alternative medication or determine which one was causing the unwanted side effects during his employment. Tr. 51–52. Moreover, when Plaintiff did start taking medication again in 2015, he stated that he did so when his symptoms worsened because he *stopped* working, not because they had worsened while he was employed. Tr. 52. Accordingly, the ALJ's finding that Plaintiff's conservative psychological treatment during Plaintiff's six years of steady employment casts doubt on Plaintiff's credibility is clear and convincing.

Because the ALJ has provided two clear and convincing reasons for discounting Plaintiff's subjective symptom testimony that are supported by substantial evidence, this Court affirms the ALJ's overall credibility determination.

## II.     Medical Opinion Testimony

Plaintiff contends that the ALJ erred by ignoring the opinion of Dr. John Gardin, Ph.D. Pl. Br. 12–14.  There are three types of medical opinions in social security cases: those from treating, examining, and non-examining doctors. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of an examining physician over that of a reviewing physician. *Id*. If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may reject it only for clear and convincing reasons. *Id.*; *Widmark v. Barnhart*, 454 F.3d 1063, 1067 (9th Cir. 2006). Even if one physician is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. *Orn,* 495 F.3d at 632; *Widmark*, 454 F.3d at 1066. However, the ALJ

may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

The ALJ errs when he rejects a medical opinion by ignoring it. *Garrison,* 759 F.3d at 1012–13. "The Secretary, however, need not discuss *all* evidence presented to her. Rather, she must explain why 'significant probative evidence has been rejected.'" *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984) (quoting *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir.1981)) (emphasis in original). Further, the harmless error analysis applies to the improper rejection of the opinion of a treating source. *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015). In Social Security cases, errors are "harmless when they 'are inconsequential to the ultimately nondisability determination'" such that "'no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'" *Id.* (quoting *Stout,* 454 F.2d at 1055–56).

Dr. Gardin performed a one-time psychological exam of Plaintiff approximately seven months prior to his alleged onset date as part of a Compensation & Pension ("C&P") examination for the Veteran's Administration ("VA"). Tr. 360–369. Dr. Gardin specifically evaluated Plaintiff's PTSD and depression symptoms. Tr. 361. He indicated that Plaintiff had diagnoses of both PTSD and Major Depressive Disorder. Tr. 361. Dr. Gardin noted that Plaintiff's PTSD caused him to experience disturbing and intrusive thoughts, nightmares, avoidance behaviors, emotional distancing, and anxiety with frequent panic attacks. Tr. 361. Plaintiff's depression caused him to feel depressed and fatigued, have suicidal ideation, and struggle with taking care of his personal needs. Tr. 362. Other symptoms—such as irritability, impaired concentration and judgment, and difficulties with social interactions—were caused by either or both conditions. Tr. 362.

At the exam, Plaintiff and his wife reported that, since his last examination in 2007, the frequency of his intrusive symptoms had remained the same but the intensity of all reported PTSD and depressive symptoms had increased. Tr. 364. Plaintiff reported that he was extremely socially and emotionally withdrawn as well as "extremely irritable" with a tendency to have angry outbursts both at home and in public. Tr. 364. Plaintiff and his wife reported that he had been working at his dispatching position for six years but had been fired and rehired twice during that time. Tr. 364. He also reported making frequent mistakes due to memory and concentration issues as well as daily tardiness. Tr. 364.

Based on his exam, Dr. Gardin opined that Plaintiff met the criteria for both PTSD and Major Depressive Disorder with symptoms that were reported to be much worse than they were during his prior examination in 2007. Tr. 368. Dr. Gardin opined that Plaintiff's conditions caused "occupational and social impairment with deficiencies in most areas such as work, family relations, judgment, thinking and/or mood." Tr. 362. He also opined that "given what they both described, it is unusual that veteran is still employed at all, with frequent inappropriate angry outbursts toward co-workers and supervisors, consistent tardiness, and significant work performance issues." Tr. 368. Ultimately, Dr. Gardin found that Plaintiff's "[p]rognosis for improvement, given lack of psychiatric support and regular mental health counseling . . . , is poor." Tr. 368–69.

Drawing on the Ninth Circuit's holding in *Carmickle*, the Commissioner contends that Dr. Gardin's examination was not significant probative evidence that the ALJ was required to discuss because it was rendered prior to Plaintiff's alleged onset date. Def. Br. 7–8. In *Carmickle*, the Ninth Circuit held that "[m]edical opinions that predate the alleged onset of disability are of limited relevance." 533 F.3d at 1165. In affirming the ALJ's decision to give

little weight to the report of an examining physician, the court emphasized that this is particularly true where the alleged disability is caused by a *discrete event*. *Id.* However, in a more recent unpublished opinion from the Ninth Circuit, the court also emphasized that the ALJ must still consider all medical opinion evidence. *See Williams v. Astrue,* 493 Fed. Appx. 866, 868–69 (9th Cir. 2012) (finding the ALJ erred in ignoring medical opinions from up to six years prior to the plaintiff's alleged onset date). Thus, while the date of the opinion may be one factor the ALJ can consider in giving an opinion more or less weight, a medical opinion is not insignificant or not probative merely because it is rendered prior to an alleged onset date, particularly in cases where the claimant suffers from an ongoing impairment.

Here, Plaintiff's conditions were not the result of a discrete event that would render Dr. Gardin's opinion irrelevant. Plaintiff has struggled with his mental health conditions for many years, and Dr. Gardin's examination provides insight into the progression of his impairments. While the ALJ may be able to give Dr. Gardin's opinion less weight, she was not permitted to ignore it under these circumstances solely because it was rendered prior to Plaintiff's alleged onset date. Accordingly, as in *Williams*, the ALJ's failure to discuss this opinion was an error.

The harmless error analysis applies to the improper rejection of medical opinion evidence. *See Marsh,* 792 F.3d at 1173 (In Social Security cases, errors are "harmless when they 'are inconsequential to the ultimately nondisability determination'" such that "'no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'") (quoting *Stout,* 454 F.2d at 1055–56)). While Defendant is correct that Dr. Gardin's exam took place many months before Plaintiff's alleged onset date, Def. Br. 8, his opinion is still probative as it provides a glimpse into the trajectory of Plaintiff's PTSD symptoms, including how his PTSD and depression impacts Plaintiff's memory, social

functioning, and work. Tr. 367–69 (describing problems with anger, isolation, short- and long-term memory as well as difficulties in his workplace). Because the Court cannot say definitively that no reasonable ALJ crediting this information would have reached a different disability determination, this error is not harmless.

## III.    Opinion of Susan Aviotti

Plaintiff also argues that the ALJ erred in giving the report of Susan Aviotti, MS, LPC, little weight. Pl. Br. 13–14. Licensed counselors are not considered acceptable medical sources. *See Blodgett v. Comm'r Soc. Sec. Admin.*, 534 Fed.Appx. 608, 610 (9th Cir. 2013) (noting that the opinion of a licensed professional counselor was an "other source" opinion). Information from medical sources other than "acceptable medical sources" may provide insight into "the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p. The ALJ must consider several factors when evaluating the opinion of such sources, including: (1) length of relationship and frequency of contact; (2) consistency of opinion with other evidence; (3) quality of source's explanation for opinion; (4) any specialty or expertise related to impairment; and (5) any other factors tending to support or refute the opinion. *See* SSR 06-03p; 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Under Ninth Circuit law, evidence from "other sources" is considered under the same standard as that used to evaluate lay witness testimony, meaning the ALJ may reject it for reasons germane to the witness. *Molina*, 674 F.3d at 1111 (Because a physician's assistant was not an acceptable medical source, the ALJ could discount a physician's assistant's opinion for germane reasons).

The record contains chart notes from Ms. Aviotti's treatment of Plaintiff between September and December of 2015, tr. 476–82, as well as a letter and a form provided by Ms. Aviotti in 2016 regarding Plaintiff's functional limitations, tr. 580–84. In the form from April 19,

2016, Ms. Aviotti opined that Plaintiff would be "unable to meet competitive standards" in various functional areas such as remembering work-like procedures, carrying out detailed instructions, maintaining attention for a two-hour segment, working close to others without being distracted, and completing a normal workday or workweek without interruption from psychological symptoms. Tr. 581–582. She also found that he would be "seriously limited, but not precluded" from understanding, remembering, and carrying out very short and simple instructions; accepting instructions and responding appropriately to criticism from supervisors; getting along with co-workers or peers; and maintaining socially appropriate behavior. Tr. 581–82. She found that he would miss four days of work per month. Tr. 582.

In her letter from August 15, 2016, Ms. Aviotti opined that Plaintiff "is totally and permanently disabled and unemployable due to extreme anxiety and daily panic attacks connected to PTSD from his military service." Tr. 584. She stated that he has a hard time remembering personal information without the help of his wife and experiences physical symptoms of panic attacks, including nausea, dizziness, and feeling "like he is going to flip out." Tr. 584. She noted that his depression can cause him to become isolative and non-functional for long periods of time. Tr. 584. She opined that "he has problems with detailed instructions" and "thinking through, starting and finishing tasks." Tr. 584. With regard to his social issues, she found that "he would have pronounced impairment in dealing with people if he was able to get a job because he can't interact or speak with others except in brief sentences that deal only with the task." Tr. 584. She observed that he "lives in a near continuous state of anxiety, with intrusive thoughts of service." Tr. 584.

The ALJ ultimately gave "little weight to Ms. Aviotti's statements as they are not consistent with the claimant's work history, day-to-day living, and inconsistent with the record

as a whole." Tr. 26. Specifically, she points out that "Ms. Aviotti's statements are inconsistent with the claimant's solid testimony at the hearing in which he was clearly able to recollect and articulate past events, able to advocate for himself, and readily able to answer simple yes or no questions with additional longer explanations." Tr. 26.

First, Plaintiff's work history constitutes a germane reason for discounting Ms. Aviotti's testimony regarding Plaintiff's limitations from his PTSD and depression. As the ALJ notes:

> Ms. Aviotti opined that the claimant could not meet competitive standards in the following areas: remembering work-like procedures, maintaining attention for two hour segments, work in coordination or proximity to others without being unduly distracted, complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace and without an unreasonable number and length of rest periods; and deal with normal work stress. Ms. Aviotti reported that the claimant had severe PTSD and would miss more than four days of work per month. . . ."

Tr. 26. The ALJ then emphasizes that Plaintiff was able to work in his most recent position as a dispatcher for seven years until his position was eliminated. Tr. 26. Given the general absence of evidence suggesting any deterioration of his conditions, Ms. Aviotti's opinion regarding Plaintiff's functional limitations is inconsistent with other evidence in the record regarding his recent lengthy work history. *See* SSR 06-03p (One factor the ALJ may take into account in analyzing testimony from "other sources" is consistency with other evidence in the record.). Accordingly, the ALJ did not err in making this finding.

Second, the ALJ's determination that Plaintiff's daily activities are inconsistent with Ms. Aviotti's testimony is reasonable. *See Dewey v. Colvin*, 650 Fed. Appx. 512, 514–15 (9th Cir. 2016) (citing *Carmickle*, 533 F.3d at 1164) ("Inconsistency with Claimant's self-reported activities of daily living was a specific and germane reason for the Appeals Counsel to discount her testimony."). Here, the ALJ reasonably found that Plaintiff's ability to take online classes conflicts with Ms. Aviotti's testimony as to Plaintiff's severe limitations. Tr. 26. For example,

Plaintiff's ability to take online classes is inconsistent with Ms. Aviotti's testimony regarding his difficulties remembering work-like procedures, maintaining attention, and following instructions. *See Carmickle*, 533 F.3d at 1163–64 (finding an ALJ properly discounted lay witness testimony where the lay witness's testimony that the plaintiff appeared uncomfortable in class and had difficulties with his coursework conflicted with the plaintiff's completion of continuous full-time coursework). Accordingly, this constitutes a germane reason to discount Ms. Aviotti's testimony regarding Plaintiff's limitations.

Third, the ALJ reasonably found that Plaintiff's presentation at the hearing conflicted with Ms. Aviotti's testimony regarding Plaintiff's limitations. For example, in *Hunt v. Colvin*, the ALJ found that a lay witness's testimony that the plaintiff had a limited attention span directly contradicted the plaintiff's ability to concentrate and answer questions at the hearing. No. 1:13-CV-01999-SKO, 2015 WL 1237408, at *14 (E.D. Cal. Mar. 17, 2015), *aff'd*, 672 Fed Appx. 744 (9th Cir. 2017), as corrected (Jan. 5, 2017). Similarly, the ALJ here noted that Plaintiff was able to recollect and articulate past events, advocate for himself, and readily answer questions with longer explanations. Tr. 26. This is inconsistent with Ms. Aviotti's statements regarding Plaintiff's limitations, particularly that Plaintiff has difficulties remembering personal information without help from his wife and that he "can't interact or speak with others except in brief sentences." Tr. 584. This, therefore, also constitutes a germane reason for discounting Ms. Aviotti's testimony. As the ALJ provided three germane reasons for discounting Ms. Aviotti's testimony, the ALJ's decision to afford her opinion little weight is affirmed. *See Dale v. Colvin,* 823 F.3d 941, 944–46 (9th Cir. 2016) (Where the medical opinion of an "other source" is not divided into distinct parts, the Ninth Circuit has suggested that "[t]ypically . . . the reason for discounting an 'other' source applies to the entire testimony of the witness.").

## IV.     VA Rating

Plaintiff argues that the ALJ failed to provide legally sufficient reasons for discounting his VA disability rating and decision. Pl. Br. 10–12. "[A]n ALJ must ordinarily give great weight to a VA determination of disability" because there is a "marked similarity between these two federal disability programs." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002); *accord McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011). However, because "VA and SSA criteria for determining disability are not identical . . . the ALJ may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record." *McCartey*, 298 F.3d at 1076.

Here, the ALJ cited two reasons for giving less weight to the VA's 100% disability rating. First, the ALJ cited Plaintiff's receipt of unemployment benefits. Tr. 24. This is not a persuasive or valid reason to discount the Plaintiff's VA disability rating. As discussed above, while an application for unemployment benefits in Oregon indicates that an individual is capable of *some* work, it does not necessarily suggest that an individual is capable of *full-time* work. *See Jewell-Greene v. Berryhill*, 6:16-cv-250-SI, 2017 WL 3034907, at *9 (D. Or. July 18, 2017) (citing Or. Admin. R. 471-030-0036(2)(b) (2017)). Applying for unemployment benefits while receiving VA disability benefits, therefore, does not cast doubt on Plaintiff's eligibility for Social Security benefits.

Second, the ALJ cited Plaintiff's work while receiving disability benefits in discounting the VA disability rating. Work performed while receiving VA disability benefits may be a persuasive, specific, and valid reason for discounting a VA disability rating where the plaintiff stopped working for reasons unrelated to his alleged impairments. *See Daley v. Comm'r Soc. Sec. Admin.*, No. 6:14-CV-00100-ST, 2015 WL 1524485, at *8 (D. Or. Apr. 2, 2015) (affirming

the ALJ's decision to discount the VA's rating because it was inconsistent with the record where the plaintiff worked full time despite a 70% disability rating from the VA); *Connors v. Berryhill*, No. 6:15-CV-2365-SI, 2017 WL 2930584, at *3–5 (D. Or. July 6, 2017) (affirming the ALJ's decision where the plaintiff's disability rating was based almost entirely on his mental impairments but he continued to work with these impairments and only ceased working for reasons unrelated to his impairments).

Here, the ALJ correctly noted that Plaintiff was working full time or 40 hours per week despite being found "unemployable" by the VA. Tr. 24. The record shows that Plaintiff was initially given a 70% disability rating in October of 2007 that was increased temporarily in 2009 and then permanently in 2014 to 100% disabled. Tr. 43, 161. During this period, Plaintiff held steady full-time jobs. Tr. 214. Though the ALJ acknowledged Plaintiff's testimony that his mental health practitioners thought it would be good for him to work and keep busy until he was no longer able to, she also found that he ultimately stopped working due to the elimination of his position rather than his conditions. Tr. 24. As discussed in Section I(A) above, this was a reasonable interpretation of the record. Because Plaintiff's work history in this context constitutes a valid, persuasive, and specific reason to discount the VA rating, the ALJ did not err in giving it little weight. *See Connors*, 2017 WL 2930584, at *5 ("The ALJ then gave a persuasive, specific, and valid reason for giving the VA's rating decisions less weight, namely Plaintiff's work history, which demonstrated Plaintiff did not lose his jobs because of his mental impairments. The ALJ did not err.")

## V.     Lay Witness Testimony

Plaintiff also argues that the ALJ erred in assigning partial weight to the written statements of Plaintiff's wife, Amanda Henderson. Pl. Br. 18–19. "Lay testimony as to a

claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account." *Molina*, 674 F.3d at 1114. The ALJ must give reasons "germane to the witness" when discounting the testimony of lay witnesses. *Valentine,* 574 F.3d at 694. The ALJ is not required, however, "to discuss every witness's testimony on an individualized, witness-by-witness basis." *Molina*, 674 F.3d at 1114. If the ALJ gives valid germane reasons for rejecting testimony from one witness, the ALJ may refer only to those reasons when rejecting similar testimony by a different witness. *Id*. Additionally, where "lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," any error by the ALJ in failing to discuss the lay testimony is harmless. *Id*. at 1117, 1122.

On October 26, 2015, Ms. Henderson filled out a Third Party Function Report. Tr. 206–13. She stated that since Plaintiff's return from military service in Iraq, his PTSD and physical injuries have "completely changed his everyday activities." Tr. 206. She described symptoms of PTSD causing difficulties with authority figures and resulting in "frequent job changes, financial problems, and counseling." Tr. 206. She said that he generally isolates himself and spends his day watching TV or his chickens. Tr. 207. She stated that he receives help from both her and their son with many of his activities, including personal care, sleep, and reminders to take medication. Tr. 207–08. She noted that the only household chore Plaintiff can do is laundry. Tr. 208. While he is able to go out every day and can do some grocery shopping, she said that he requires a "safety person" for panic attacks and flashbacks. Tr. 209. She also wrote that he cannot handle their finances because he is very irresponsible with money. Tr. 209. She stated that he is generally isolative and distrustful of others, so he only spends time with family or attending

Pointman Ministries or church. Tr. 210. She describes his attention span as lasting only 5–10 seconds, and she says he does not finish what he starts. Tr. 211.

The ALJ gave Ms. Henderson's statements partial weight for three reasons. First, she cited a specific conflict between Plaintiff's work history and Ms. Henderson's testimony that he had frequently changed jobs. Tr. 25. Here, Ms. Henderson suggests that Plaintiff had frequent job changes due to problems with authority figures. Tr. 206, 211. But the record shows that Plaintiff had been able to maintain his employment with his most recent employer—Jerry D. Bowers Trucking LLC—during the seven years prior to filing for disability. Tr. 40 (testifying that he worked for Bower's trucking from 2007 to 2014); Tr. 177 (work history form indicating he worked for Bower's trucking from 2007 to 2014). This specific inconsistency constitutes a germane reason to discount the opinion of Ms. Henderson. *See* SSR 06–03p (it is "appropriate to consider such factors as ... whether the [lay witness] evidence is consistent with other evidence. . .).

Second, the ALJ found that Ms. Henderson's testimony as to Plaintiff's difficulty with focus and concentration conflicted with Plaintiff's ability to take courses online. Tr. 25. Inconsistencies between lay witness testimony and activities of daily living can constitute a germane reason to discount a claimant's testimony. *See Dewey v. Colvin*, 650 Fed. Appx. 512, 514–15 (9th Cir. 2016) (citing *Carmickle*, 533 F.3d at 1164) ("Inconsistency with Claimant's self-reported activities of daily living was a specific and germane reason for the Appeals Counsel to discount her testimony."). Plaintiff testified that he was able to maintain his grades while taking courses full-time online. Tr. 50–51. His ability to successfully do so directly conflicts with Ms. Henderson's testimony that he has an attention span of 5-10 seconds and does not finish

what he starts. Tr. 211. Accordingly, this also constitutes a germane reason for discounting Ms. Henderson's testimony.

Third, the ALJ discredited Ms. Henderson's testimony because of Plaintiff's limited mental health treatment during the time he was working and filing for disability benefits. Tr. 25. Generally, claimants cannot be penalized for failing to seek or comply with treatment where they have sufficient reasons for doing so. *Carmickle*, 533 F.3d at 1162. Here, the record suggests that Plaintiff's failure to continue his psychotropic medications was due to the side effects of his medications. Tr. 51. However, as discussed above, Plaintiff was also able to maintain employment for many years despite his decision to cease taking psychotropic medications and instead use self-calming techniques. Tr. 51–52. In the absence of any evidence of deterioration or worsening symptomology at the end of his employment, Plaintiff's ability to work for such a long period of time under these circumstances constitutes a clear and convincing reason for discounting his testimony. *See supra* Section I(D). Such reasoning applies equally well to the lay witness testimony of his wife regarding the severity of his psychological symptoms. *See Valentine,* 574 F.3d at 694 (Where the ALJ provides clear and convincing reasons for rejecting a claimant's subjective complaints, the same reasons may be considered germane for rejecting similar testimony from lay witnesses.). As all three reasons are both germane and specific to Ms. Henderson's testimony, the ALJ's decision to give Ms. Henderson's testimony little weight is affirmed.

## VI.     RFC Assessment & VE Hypothetical

Plaintiff alleges that the ALJ erred in relying on incomplete hypotheticals presented to the Vocational Expert ("VE"). Pl. Br. 5–10. The Residual Functional Capacity ("RFC") is the most a person can do, despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545,

416.945. In formulating an RFC, the ALJ must consider all medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. *Id.*; SSR 96-8p. An ALJ may rely on the testimony of a VE to determine whether a claimant retains the ability to perform past relevant work or other work in the national or regional economy at step five. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). The ALJ is required to include only those limitations that are supported by substantial evidence in the RFC and hypotheticals posed to a VE. *See id.* at 1163–65. "Conversely, an ALJ is not free to disregard properly supported limitations," including improperly discredited symptom testimony provided by the claimant or lay witness. *Robbins,* 466 F.3d at 886. "[I]f an ALJ's hypothetical is based on a residual functional capacity assessment that does not include some of the claimant's limitations, the vocational expert's testimony 'has no evidentiary value.'" *Ghanim*, 763 F.3d at 1166 (citing *Carmickle*, 533 F.3d at 1166).  And "[w]hen there is an apparent conflict between the vocational expert's testimony and the [Dictionary of Occupational Titles] . . . the ALJ is required to reconcile the inconsistency." *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015) (citing *Massachi v. Astrue*, 486 F.3d 1149, 1153–54 (9th Cir. 2007)).

Here, Plaintiff contends that the ALJ made two errors. First, Plaintiff argues that the ALJ erred in relying on the testimony of the VE because the hypothetical questions did not include all of Plaintiff's limitations as described by Plaintiff's own testimony, the testimony of lay witness, and the opinions of Plaintiff's treating providers. Pl. Br. 20. As the Court has determined that the ALJ erred in failing to discuss the opinion of Dr. Gardin, the ALJ's hypothetical may be based on an incomplete RFC assessment. It was, therefore, an error for the ALJ to rely on the testimony of the VE in making her ultimate disability determination.

Second, Plaintiff argues that the ALJ erred in finding Plaintiff could perform the job of "surveillance system monitor" because it has a "Reasoning Level of 3, which is inconsistent with the ALJ's own finding limiting Plaintiff to simple instructions." Pl. Br. 20. Plaintiff is correct. Level 3 Reasoning in the Dictionary of Occupational Titles ("DOT") requires the claimant to "apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations." DOT, Appendix C, 1991 WL 688702. In this case, the ALJ found that Plaintiff "is limited to understanding and carrying out simple instructions." Tr. 23. Both Ninth Circuit precedent and district court case law suggest these findings are at odds. *See Zavalin*, 778 F.3d at 847 (Where the plaintiff was limited to simple, routine, and repetitive work, the court found that the plaintiff's limitations were in conflict with the demands of Level 3 reasoning and that "Level 2 Reasoning . . . seems at least as consistent with [the plaintiff's] limitation as Level 3 Reasoning, if not more so."); *Cobb v. Colvin*, No. EDCV 15-00999-JEM, 2016 WL 797564, at *4–5 (C.D. Cal. Feb. 29, 2016) (finding the ALJ erred because "there is an apparent conflict between the ALJ's RFC limitation to 'simple instructions' and Reasoning Level 3 jobs such as those identified by the VE"); *see also Bowman v. Astrue,* 228 F. Supp. 3d 1121, 1141 (D. Or. 2017) (citing cases that hold that it was an error for the ALJ to limit the plaintiff to simple instructions and find that he could perform a job requiring Level 3 Reasoning). As the "surveillance system monitor" job requires Level 3 Reasoning, Surveillance-System Monitor, DOT 379.367-010, 1991 WL 673244, the ALJ erred by failing to resolve the inconsistency between the limitations in the hypothetical and the VE's testimony.

Here, however, this error was harmless: the VE testified that there were other jobs in significant numbers in the national economy that Plaintiff could perform that are consistent with

her RFC limitations. Tr. 65. In her decision, the ALJ cited the VE's testimony in finding that Plaintiff could perform the requirements of "eyeglass assembler" and "jewelry preparer." Tr. 27; *see* Final Assembler, DOT 713.687-018, 1991 WL 679271; Preparer, DOT 700.687-062, 1991 WL 678937. Both positions require only Level 1 and 2 Reasoning and are, therefore, consistent with Plaintiff's RFC limiting plaintiff to "simple instructions." *See Barnes v. Colvin*, 6:15-CV-01906-HZ, 2015 WL 8160669, at *4 (D. Or. Dec. 7, 2015) (finding "'simple, routine instructions' are not inconsistent with Level 2 reasoning"). Accordingly, the ALJ's error in finding Plaintiff was capable of working as a "surveillance system monitor" is harmless as it has no impact on the ultimate disability determination. *Stout*, 454 F.3d at 1054–56 (Errors are harmless if inconsequential to the ultimate disability determination.).

## VII.    Remand for Further Proceedings

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the Court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r Soc. Sec. Admin.*, 635 F.3d 1135, 1137–38 (9th Cir. 2011). The "ordinary remand rule" is the proper course except in rare circumstances. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014).

Plaintiff argues that a remand for an award of benefits is appropriate in this case because crediting the improperly discredited evidence as true would require the ALJ to find Plaintiff disabled. Pl. Br. 15.  As discussed above, the ALJ's only error was failing to take into consideration the opinion evidence of his examining doctor, John Gardin, PhD. *See supra*

Section II. Dr. Gardin's examination provides some information regarding Plaintiff's symptoms and functional limitations, particularly with regard to Plaintiff's difficulties with memory and social functioning. Tr. 367–68. However, the ALJ's RFC also includes some limitations in both areas by limiting Plaintiff to "simple instructions" and "occasional brief contact with the general public and coworkers." Tr. 23. Some of the potential functional limitations identified by Dr. Gardin also conflict with other evidence of the record. *Compare* Tr. 368 (Dr. Gardin notes reports of frequent tardiness) *with* Tr. 581 (Ms. Aviotti notes that he would have no difficulty "[m]aintain[ing] regular attendance and be punctual within customary, usually strict tolerances."). Because there are outstanding issues with regard to Dr. Gardin's opinion and it is unclear what impact crediting his opinion would have on the ultimate disability determination, the Court declines to remand this case for the payment of benefits.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is REVERSED and REMANDED for further administrative proceedings.

IT IS SO ORDERED.

Dated this _____ day of April, 2018.


MARCO A. HERNÁNDEZ
United States District Judge